JOCELYN BURTON, SBN 135879
SCOTT S. NAKAMA, SBN 296732
BURTON EMPLOYMENT LAW
1939 Harrison Street, Suite 400
Oakland, CA 94612
Ph: (510) 350-7025
Fax: (510) 473-3672
e-mail: jburton@burtonemploymentlaw.com
e-mail: snakama@burtonemploymentlaw.com

Attorneys for Plaintiff
NICHOLAS M.  SMITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS M. SMITH, individually, and on behalf of the general public, and as an "aggrieved employee" under the California Labor Code Private Attorney Generals Act,<br><br>        Plaintiff,<br><br>   vs.<br><br>GOLDEN STATE WARRIORS, LLC,<br><br>        Defendant. | **Case No.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff NICHOLAS M. SMITH (hereinafter "Plaintiff") respectfully alleges as follows:

## PRELIMINARY STATEMENT

Plaintiff NICHOLAS M. SMITH brings this action for monetary damages and injunctive relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* Title VII of the Civil

Rights Act of 1964 as amended effective January 29, 2009, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), the California Fair Employment and Housing Act, California Gov't Code § 12940 *et seq.* (hereinafter "FEHA"), and the California Labor Code.  Plaintiff seeks redress for injuries he sustained from Defendant GOLDEN STATE WARRIORS, LLC's ("GSW" or "Defendant") unlawful employment discrimination against him because of disability and retaliation for engaging in protected activity.  In addition, Plaintiff seeks redress for injuries he and other aggrieved employees sustained from Defendant GSW's failure to provide them with 1) their final wages as required by state law, 2) all sales commission earned, and 3) wage statements that complied with California Labor Code § 226(a).

## JURISDICTION

1.      This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e-5 to enforce the provisions of Title VII, 42 U.S.C. § 2000e *et seq.* and the provisions of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, and conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

2.      This Court has supplemental jurisdiction over the related state claims under 28 U.S.C. § 1367.  Plaintiff's claims pursuant to the FEHA, Cal. Gov't Code §§ 12940(a), (h), (k), and (m), his claim of wrongful discharge in violation of public policy, breach of contract claim, and his claims under the California Labor Code are related, as all of Plaintiff's claims share common operative facts.  Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

3.      The Court has the authority to grant declaratory relief under 42 U.S.C. § 2000e-5(f) & (g).

## INTRADISTRICT ASSIGNMENT AND VENUE

4.      Venue is proper in the United States District Court for the Northern District of California as the unlawful employment practices occurred in Oakland, California.  28 U.S.C. § 1391(b)(2), 42 U.S.C. § 2000e-5(f)(3).

5.      This case should be assigned to the San Francisco or Oakland Division of the Northern District of California under Civil Local Rule 3-2 because a substantial part of the events or omissions giving rise to these claims occurred in Alameda County.

## PARTIES

6.      Plaintiff is a resident of California.  Plaintiff was at all times relevant herein employed in Oakland, California and was an "employee" as defined by 29 U.S.C. §§ 203(3) and 12111(4), the California Labor Code and the applicable Wage Order(s) of the Industrial Welfare Commission ("IWC").

7.      At all times relevant to this Complaint, Defendant is a corporation operating and existing under the laws of the State of California.

8.      Defendant is a professional basketball team.  Defendant is part of the National Basketball Association ("NBA").

9.      At all times relevant to this Complaint, Defendant is an employer covered by the Americans with Disabilities Act  of 1990, as amended, Title VII, and the California FEHA in that it is engaged in an industry affecting interstate commerce and employs at least 15 full or part-time employees for each working day of each of 20 or more calendar weeks in the current or preceding year.

10.     At all relevant times, Defendant has been engaged in commerce within the meaning of 29 U.S.C. § 203(b).

## WAGE AND HOUR CLAIMS

11.     Plaintiff worked for Defendant from approximately June 25, 2012 to March 16, 2018 in Oakland, California.

12.     As part of Plaintiff's job duties, he sold group ticket packages for company events during Warriors home basketball games at Oracle Arena.  Plaintiff was required to attend every home game to ensure that clients enjoyed their events.   According to Plaintiff's offer letter dated June 25, 2012, Plaintiff was hired as an Account Executive, Group Sales at "compensation at the initial non-exempt annual rate of base salary equal to $31,500."  The hourly rate was equivalent to approximately $15.144 per hour.   Plaintiff also earned a commission from the revenue earned from the group tickets he sold. At the time of his termination, Plaintiff earned approximately $18.5096 per hour plus the wages he earned from his sales commission and non-discretionary bonuses. He initially reported to Group Ticket Sales Director Chris Murphy.  After Mr. Murphy was transferred to work in Santa Cruz in approximately 2015, he reported to new Group Ticket Sales Director Maria Valdehueza.

13.     Plaintiff and Defendant signed an Individual Sales Compensation Plan for the 2015-2016 season stating that Plaintiff's base salary was $36,000 and that he received five percent commission for "A, B and C Game Group sales" and six percent commission rate "for D, E and F Game Group sales."  He also received a non-discretionary bonus based on the amount of revenue from ticket sales and another non-discretionary bonus based on the department's group sales. Defendant did not assign Plaintiff a sales quota. On page 1 of the plan, it states the following: "If the

participant takes a protected leave of absence in accordance with State and Federal law, the Participant's sales quota will be prorated to account for the protective leave of absence."

14.     For the 2016-2017 season, Plaintiff and Defendant signed an Individual Sales Compensation Plan indicating that Plaintiff's base salary was $37,000 and that he received three percent commission for individual sales and one percent commission rate "for Equal Split for Pooled Sales."  He also received a non-discretionary bonus based on the amount of revenue from ticket sales and another non-discretionary bonus based on the department's group sales.   Defendant did not assign him a sales quota.  On page 1 of the plan, it states the following: "If the participant takes a protected leave of absence in accordance with State and Federal law, the Participant's sales quota will be prorated to account for the protective leave of absence." The 2015-2016 and 2016-2017 commission agreements did not contain any clause reducing Plaintiff's commission because of an arena fee. Plaintiff is informed and believed that he never signed a commission agreement with Defendant authorizing Defendant to deduct an arena fee from Plaintiff's total sales.

15.     Plaintiff was consistently ranked among the top performers in the NBA in group ticket sales.  Senior Vice President, Business Development Brandon Scheider informed Plaintiff of the following via email: "We just received word from the NBA that you were number one in the league in group sales revenue for the 2015-16 season!  Congratulations on this unbelievable accomplishment!"

16.     In 2015, Plaintiff earned approximately $141,000 in wages.  In 2016, Plaintiff earned approximately $140,419 despite his commission rate decreasing significantly. In 2017, even though the GSW reduced his commission rate and Plaintiff missed time during the NBA season due to his disability, he still earned approximately $82,600.

17.     Plaintiff's commission would have been higher if Defendant did not illegally deduct an Arena Debt Fund Fee from Plaintiff's commission throughout his employment in violation of Labor Code §§ 221, 224, 2802.   Specifically, before the commission was calculated, GSW sent Plaintiff spreadsheets instructing him to update the spreadsheets by deducting approximately a five percent Arena Debt Fund Fee from his sales.  After the arena fee deduction, GSW calculated the commission earned by Plaintiff from the remaining sales.   Because Plaintiff was not paid all commission earned, the itemized wage statements also did not accurately show the gross wages earned and the net wages earned.  Plaintiff's wage statements failed to list the Arena Debt Fund Fee as a deduction. Plaintiff is informed and believed GSW illegally deducted an arena fee from the commission of other employees.

18.     When Plaintiff's employment ended in March 2018, he was not paid all wages (e.g., commission and bonuses) owed to him in a timely manner as required by Labor Code §§ 202 and 204.  Accordingly, Defendant is liable for waiting time penalties pursuant to Labor Code § 203.

19.     Defendant also issued Plaintiff and other aggrieved employees with itemized wage statements that do not comply with Labor Code section 226(a)(8).  The wage statements do not accurately show the name of the legal entity that is the employer.  Instead, the wage statements list the employer's name only as "GOLDEN STATE WARRIORS" instead of its full legal name (GOLDEN STATE WARRIORS, LLC).

20.     To further add to the confusion regarding Plaintiff's employer, there are multiple legal entities with similar names.  For example, the following corporations are registered or were previously registered as active corporations with the California Secretary of State: (1) GOLDEN STATE WARRIORS, INC., (2) GOLDEN STATE WARRIORS COMMUNITY FOUNDATION, and (3) WARRIORS, INC.  Moreover, GOLDEN STATE WARRIORS, LLC and GOLDEN STATE

WARRIORS COMMUNITY FOUNDATION have the same address of 1011 Broadway, Oakland, CA 94607.  From the wage statement alone, Plaintiff cannot distinguish "GOLDEN STATE WARRIORS" (name listed on the wage statements) from other corporations with similar names.

21.     Because Plaintiff was not paid all commission and bonuses that he earned, the itemized wage statements that Plaintiff received from Defendant did not accurately show the gross wages earned and the net wages earned.

## DISCRIMINATION AND RETALIATION CLAIMS

22.     On or around November 24, 2017, Plaintiff went on disability leave.

23.     On or around February 22, 2018, Plaintiff returned from medical leave.  Soon after, he complained to Vice President of Human Resources Gracie Mercado that Defendant failed to pay him all overtime wages.  While Plaintiff complained, Ms. Mercado cut him off mid-sentence and changed the subject of the conversation.  After Plaintiff insisted on talking about his complaint, Ms. Mercado finally promised to investigate his concerns.

24.     On March 9, 2018, Plaintiff drafted a letter that he planned to send to NBA Commissioner Adam Silver.  Plaintiff decided to write the letter directly to Mr. Silver as Mr. Silver encouraged all employees of an NBA team to use a hotline to report workplace misconduct.  In the letter, Plaintiff complained about (1) Mr. Murphy harassing employees based on their race and sex, (2) the failure of Defendant to pay him all overtime wages earned, (3) the failure of Defendant to pay all bonuses, (4) Ms. Mercado's reluctance to address his complaints of overtime, and (5) unsafe working conditions.  Further, Plaintiff documented his physical and mental disabilities.

25.     In the letter, Plaintiff complained that Mr. Murphy constantly racially harassed and made sexist comments toward two Filipino employees: Ms. Valdehueza and Anna Cuartero.  Plaintiff

alleged Mr. Murphy "thought it was okay to constantly harass and make sexist comments about their ethnicity."  Plaintiff also alleged that Mr. Murphy made Ms. Valdehueza cry.

26.     In the letter, Plaintiff complained about the lack of overtime pay.  He stated that "We are pushed so hard and work unprecedented hours in office and even more notably outside of office to try to fulfill these lofty goals."  Plaintiff claimed that "[w]ork loads are 60 hours a week on average from at least August - February."  Plaintiff also stated the following:

> Now let me make note here: I've been paid overtime but not all of it. Overtime for games only but being a group sales account executive requires additional hours outside of 8:30am-5:30 pm to prepare for events and to try to meet sales goals. It is not okay to slave me and not pay me for my hard worked overtime hours. [*sic*] Whats upsetting is that our company will not give the overtime but expects us to work the hours in order to achieve the goals. [*sic*] Ive been told "you work hard and you will be compensated through commission but we cannot pay you all that overtime," "if you are working too much, maybe you should give up some of your accounts" (accounts I worked hard to get compensated on mind you) or being blamed for not working hard enough during the regular 8 hour shift. The problem with this tactic is that it has come with threats and meetings where we are constantly yelled at and ridiculed with comments like "you guys are sloppy" "step up your game" and "you aren't working hard enough". The tone on these comments is unbearable. These words are extremely hurtful knowing all the unpaid hours and time a lot of us have committed to the organization. The threats consist of firing or replacing us with comments like "we are the Golden State Freaking Warriors, if you don't want to work we have a lot of people that do," "If you don't want to work hard, door is right there guys," "You know how many resumes we have, people are begging to work with us." The employee handbook which states that if we try to claim overtime without approval it could lead to termination. I see that as a manipulation tactic to scare us. I understand the need to not overpay employees OT because it gets expensive. However, I've asked numerous of times and been granted a few hours during one week in August. We have asked and been denied OT even though our workload demands it and they expect us to work it. It has become an accepted part of our job and we just assume [*sic*] thats the way it goes.

27.     Plaintiff also complained of the following: "Our commission structure has been cut even though we have continued to sell more revenue each season. There are bonuses that have not been paid in a year this April, that were promised in January 2018. I find this business practice very unethical and I believe in the state of California it is illegal to not pay hourly sales employees

overtime." Further, Plaintiff complained that Ms. Mercado ignored his complaints of lack of overtime pay.

28.     In the letter, Plaintiff reported his physical and mental disabilities.  Specifically, he stated, "I have had two hernia surgeries, testicle surgery and slipped discs, pinched nerves in my back."  Plaintiff also stated: "[*sic*] Ive been hospitalized in the ER with a panic attack and continue to have severe anxiety/depression, seen a psychiatrist, and prescribed medications for depression and anxiety. I am just not the same person right now physically or mentally."

29.     Plaintiff also complained about the unsafe working conditions of Oracle Arena. He stated:

> Oracle [*sic*] arena is the NBA's oldest arena and the workplace set up is horrendous. My client, Enrique Ovando The Salvation Army, slipped and fell (hurt himself in the process) on built up water on the floor. When it rains, puddles build up in our group walkway. [*sic*] Ive reported it in the past. But I've seen it continue to be a problem. As a group sales representative, we host many special events with lots of giveaway boxes and moving parts that keep us running around throughout the game. We have been given parking passes at Oracle Arena and instructed to park in B lot.  A number of us have had to lug heavy boxes across the parking lot which I estimate from lot to entrance to be about 100-200 yards depending on where you park. [*sic*] Ive tried to park in closer lots with success sometimes but not others. [*sic*] Ive asked for a better parking pass but declined.

> Finding an arena dolly (our department doesn't have a dedicated one) is a crap shoot. Sometimes you can find one in a timely matter, sometimes not. Elevators have been known to break down on more than one occasion leaving event set up on the 200 level to carrying heavy boxes up 5 flights of stairs. I was once told, "doors open in 30 minutes, you better find a way to get setup." I estimate about 3-5 miles of walking around the arena up and down stairs for most worked home games. My [*sic*] co worker, Ashley Tow had to get up on the catwalk for giveaways. She said she was scared being that high. This type of physical activity was never stated in my job description so unfortunately I was never given a choice to accept this type of work.

30.     Plaintiff also complained that Mr. Murphy threatened him physically by grabbing his arm, pulling him into a stairway and screaming at him during an NBA game at Oracle Arena. Plaintiff also stated: "[Mr. Murphy] was a bully as my boss and when I stood up for myself I was

pulled into Director of Ticket Sales, John [*sic*] Beavens office and told 'not to be combative with my

boss' and that it was not a good look."

31.     Plaintiff wanted to share the letter with Vice President of Ticket Sales Jonathan

Beaven before he sent the letter in order to give Defendant a chance to address his complaints.  On or

around March 14, 2018, Plaintiff read the letter in its entirety to Mr. Beaven.   Plaintiff also

complained to Mr. Beaven about the 5 percent Arena Debt Fund Fee deducted from his commission.

In response, Mr. Beaven was defensive and alleged that the fee is part of the sales process and part of

the agreement with the Oracle Arena.

32.     On or around March 16, 2018, Plaintiff had a meeting with Mr. Beaven and Ms.

Mercado.  During the meeting, Mr. Beaven told Plaintiff that, "We know you're not 100 percent and

we want to help soften the blow." Mr. Beaven also stated that the company lawyer will draft an exit

contract for Ms. Smith.

33.     On March 16, 2018, Ms. Mercado emailed Plaintiff and enclosed a separation

agreement.  In response, Plaintiff wrote an email stating that the letter inaccurately represented their

communications earlier that day.  Plaintiff complained that he did "not want to be punished for

moving forward to support the organization with these potential challenging issues I have raised."  He

also stated he was "prepared to continue to work for the Golden State Warriors as a current

employee."

34.     On March 16, 2018, GSW General Counsel David Kelly emailed Plaintiff and carbon

copied Ms. Mercado.  In the email, Mr. Kelley stated the following: "However, unless we receive

confirmation from you today that you are resigning effective today, your employment with GSW will

be terminated effective today."  In Plaintiff's response email, he stated: "Sounds like I've been

terminated for bringing up the misconduct.  No other reason was stated."  Mr. Kelly responded by email stating: "To clarify, you have been terminated for poor performance."  In response, Plaintiff informed Mr. Kelley and Ms. Mercado of the following via email on March 16, 2018:

> I just returned from disability and have been the number 1 rep in our department since [*sic*] i started in 2012 and number 1 in the NBA the last two years.  I also have sick and personal time [*sic*] to use that I was using for my discomfort and pain.  How is this remotely possible that I have underperformed?

35.     In another email to Mr. Kelley on that same day, Plaintiff stated: "I should also mention that I am 3rd out of 5 Sales reps in our department in sales this season and I missed three months due to disability. So if I am underperforming then what are the two people below me doing?"  Mr. Kelley and Ms. Mercado never responded to Plaintiff's email.

## EXHAUSTION OF DISCRIMINATION ADMINISTRATIVE REMEDIES

36.     On or about April 27, 2018, Plaintiff submitted a complaint of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH), EEOC Charge No. 555-2018-01274.

37.     On or about August 10, 2018, the EEOC mailed Plaintiff Right to Sue Letters from the EEOC and DFEH.

## PRIVATE ATTORNEYS GENERAL ACT ALLEGATIONS

38.     The Labor Code Private Attorneys General Act of 2004 ("PAGA"), as set forth at Labor Code section 2698 et seq., is and at all times relevant, was applicable to Plaintiff's employment with Defendant.

39.     Pursuant to Labor Code section 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a

civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code section 2699.3.

40.     Plaintiff was employed by Defendant, and the alleged violations were committed against him in relation to his employment with Defendant.  Plaintiff is, therefore, an aggrieved employee as defined by Labor Code section 2699(c).  Other employees, current and former, are also aggrieved employees in that one or more of the alleged violations were also committed against them in relation to their employment with Defendant.

41.     Pursuant to Labor Code section 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed.   Furthermore, any employee who prevails in any such action shall be entitled to an award of reasonable attorney's fees and costs.

42.     Pursuant to Labor Code section 2699.3, an aggrieved employee may pursue a civil action under the PAGA after the following requirement have been met:

a. The aggrieved employee has provided written notice by online filing to the LWDA and by certified mail to the employer (hereinafter "Employee's Notice") of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations; and

b. The LWDA has provided notice (hereinafter "LWDA's Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the Employee's claims.  Upon receipt of the LWDA's Notice, or if the LWDA does not provide such Notice within 65 calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action

pursuant to Labor Code section 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

43.     On May 8, 2018, Plaintiff provided written notice by online filing to the LWDA and by certified mail to GSW of specific provisions of the Labor Code alleged to have been violated by GSW, including the facts and theories to support the alleged violations.

44.     GSW failed to cure the alleged violations of Labor Code section 226(a)(8).

45.     As of November 8, 2018, the LWDA has not provided Plaintiff with written notice that it intends to investigate the alleged violations of the Labor Code.  Accordingly, Plaintiff has satisfied the administrative prerequisites under Labor Code section 2699.3 to bring a civil action to recover civil penalties under the PAGA, in addition to other remedies.

46.     Pursuant to Labor Code section 2699.3(d), the aforementioned 65-day "exhaustion period" is not counted as part of the time limited for the commencement of a civil action to recover civil penalties under the PAGA.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. §§ 12101 ET SEQ.**
**(Disability Discrimination – ADA)**
**Against Defendant**

47.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

48.     The Americans with Disabilities Act provides that covered entities may not discriminate against qualified individuals on the basis of disability regarding the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

49.     Plaintiff suffers from a disability because he possesses a physical and/or mental impairment that substantially limits one or more of his major life activities, he has a record of such impairment, or he was regarded as having such impairment.

50.     Plaintiff is a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of the position he held.

51.     As set forth above, Defendant discriminated against Plaintiff on the basis of his disability.

52.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agents/employees of Defendant acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiff, justifying an award of punitive damages.

53.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief as provided.

## SECOND CAUSE OF ACTION
### VIOLATION OF CAL GOV. CODE § 12940(a)
### (Disability Discrimination – FEHA)
### Against Defendant

54.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

55.     The FEHA explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation or military and veteran status. CAL. GOV. CODE § 12940(a). "Race, religious creed, color, national origin, ancestry, physical

disability, mental disability, medical condition, marital status, sex, age, sexual orientation, or military and veteran status" includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics. CAL. GOV. CODE § 12926(n).

56.     At all times relevant herein mentioned, Plaintiff was qualified for the position he held with Defendant.

57.     Defendant was Plaintiff's employer under California Government Code section 12926(d) and was therefore barred from discriminating in its employment decisions in violation of Government Code section 12940(a).

58.     As set forth above, Defendant discriminated against Plaintiff based on his disability, perceived disability, and/or future perceived disability, in violation of Government Code section 12940(a).

59.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agents/employees of Defendant acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiff, justifying an award of punitive damages.

60.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief as provided.

### THIRD CAUSE OF ACTION
**Retaliation**
**(California Government Code § 12940(h))**
**Against Defendant**

61.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

62.     Plaintiff engaged in activity protected by FEHA including, but not limited to complaining that Defendant discriminated and/or harassed employees based on their sex and/or race. Plaintiff had a good faith reasonable belief that he was opposing Defendant's discriminatory and retaliatory practices forbidden under California and federal law.

63.     Defendant knew of Plaintiff's protected activity and retaliated against him because of his protected activity.  After Defendant learned of Plaintiff's protected activity, it took adverse actions against him, including but not limited to altering the terms and conditions of Plaintiff's employment and terminating his employment.

64.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agents/employees of Defendant acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiff, justifying an award of punitive damages.

65.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief as provided.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CAL. GOV. CODE § 12940(k)**
**(Failure to Prevent Discrimination and Retaliation)**
**Against Defendant**

66.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

67.     The FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." CAL. GOV. CODE § 12940(k).

68.     Defendant was Plaintiff's employer under Government Code section 12926(d) and was therefore required to prevent discrimination and retaliation as set forth in Government Code section 12940(k).

69.     Defendant knew or should have known of the discrimination and retaliation by its employees, supervisors, and managers.

70.     As set forth above, Defendant did nothing to rectify or prevent said discrimination and retaliation.  Instead, Defendant consented to, encouraged, permitted and/or acquiesced to the discrimination.

71.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agents/employees of Defendant acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiff, justifying an award of punitive damages.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief as provided.

### FIFTH CAUSE OF ACTION
**Wrongful Discharge in Violation of Public Policy**
**Against Defendant**

73.     Plaintiff incorporates the allegations of Paragraph 1 through 46 by reference above as though fully set forth.

74.     Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to the case of *Tameny v. Atlantic Richfield Company*, 27 Cal.3d 167 (1980) and *Rojo v. Kliger*, 52 Cal.3d 65 (1990).

75.     Under California law, there is a fundamental and well-established public policy prohibiting discrimination against employees because of their disability and prohibiting retaliation for engaging in protected activity.  Said public policies are embodied in the Constitution of the State of California and in California statutes, particularly Government Code §§ 12920 and 12940 and embodied in Labor Code §§ 98.6 and 6310.

76.     Plaintiff was subjected to working conditions that violated public policy, in that he experienced disability discrimination and retaliation for engaging in protected activity including but not limited to (a) Plaintiff complaining about Defendant's failure to pay him all overtime wages and/or commission, (b) complaining of unsafe working conditions, (c) complaining that Defendant discriminated against and/or harassed other employees because of their race and/or sex, and (d) requesting an accommodation for his disability.

77.     Plaintiff was employed by Defendant.

78.     Because of Defendant's wrongful termination in violation of public policy, Plaintiff suffered economic and emotional distress damages.

79.     In doing the acts herein alleged, Defendant acted with oppression, fraud, malice and in conscious disregard of Plaintiff's rights, and Plaintiff is entitled to punitive damages in an amount according to proof at trial.

80.     Wherefore, Plaintiff has been injured and request relief as provided.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 226(a), 226.3**
**(Failure to Furnish Complete and Accurate Itemized Wage Statements – PAGA)**
**Against Defendant**

81.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

82.     Labor Code section 226(a) provides "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when the wages are paid by personal check or cash, an accurate itemized statement in writing showing [. . .] (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is

solely based on a salary and who is exempt from payment of overtime under subdivision (a) of

Section 515 or any applicable order of the Industrial Welfare Commission, [. . .] (4)  all deductions,

provided that all deductions made on written orders of the employee may be aggregated and shown

on one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is

paid, (7) the name of the employee and only the last four digits of his or her social security number or

an employee identification number other than a social security number, (8) the name and address of

the legal entity that is the employer [. . .] and (9) all applicable hourly rates in effect during the pay

period and the corresponding number of hours worked at each hourly rate by the employee[.]"

83.     An employee suffering injury as the result of a knowing and intentional failure by an

employer to comply with Labor Code section 226(a) is entitled to recover the greater of all actual

damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred

dollars ($100) per employee for each violation in a subsequent pay period, not to exceed the

aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and

reasonable attorney's fees.  Labor Code § 226(e)(1).

84.     An employee is deemed to suffer injury if the employer fails to provide a wage

statement or if the employer fails to provide accurate and complete information as required by any

one or more of the items (1) through (9), inclusive, of subdivision (a) of Labor Code section 226 and

the employee cannot promptly and easily determine from the wage statement alone:  (i) the amount of

the gross wages or net wages paid to the employee during the pay period or any of the other

information required to be provided on the itemized wage statement pursuant to items (2) to (4),

inclusive, (6), and (9) of subdivision (a); (ii) which deductions the employer made from gross wages

to determine the net wages paid to the employee during the pay period; (iii) the name and address of

the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section

1682, the name and address of the legal entity that secured the services of the employee during the pay period; and (iv) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.  Labor Code § 226(e)(2)(A), (e)(2)(B)(i)-(iv).  "Promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.  Labor Code § 226(e)(2)(C).

85.     During the relevant time period(s) and as set forth above, Defendant failed to provide accurate and complete itemized wage statements to Plaintiff, in violation of Labor Code section 226(a).

86.     Labor Code section 226.3 provides the following in pertinent part:  "[a]ny employer who violates subdivision (a) Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226.  The civil penalties provided for in this section are in addition to any other penalty provided by law.

87.     Defendant failed to provide Plaintiff and other aggrieved employees with wage statements that stated the accurate: a) gross wages earned, b) net wages earned, c) name of the legal entity that is the employer, and d) all deductions.

88.     Wherefore, Plaintiff has been injured as set forth above and requests relief as hereafter provided.  Plaintiff also hereby requests the civil penalties, attorney's fees, and costs recoverable in a

civil action brought by an aggrieved employee on behalf of himself and, as a proxy for the LWDA, on behalf of Defendant's other current and former employees.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 204**
**(Failure to Timely Pay Wages – PAGA)**
**Against Defendant**

89.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

90.     Labor Code section 204 provides "[a]ll wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."

91.     During the relevant time period, Defendant failed to pay Plaintiff in a timely manner his wages earned, in violation of Labor Code section 204.

92.     Pursuant to Labor Code section 218.5, in any action brought for the nonpayment of wages, fringe benefits, or health and welfare pension fund contributions, a prevailing plaintiff shall be entitled to an award of attorney's fees and costs if requested upon the initiation of the action.

93.     Plaintiff has been injured and requests relief.  Plaintiff also requests the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of himself and, as a proxy for the LWDA, on behalf of Defendant's other current and former employees.

**EIGHTH CAUSE OF ACTION**

### VIOLATION OF LABOR CODE §§ 201, 202
### Failure to Pay Timely Wages Upon Resignation or Discharge-PAGA
### Against Defendant

94.     Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 46 above as though fully set forth.

95.     At all times set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee voluntarily leaves his or her employment, his or her wages, will become due by seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

96.     During the relevant period, Defendant willfully failed to pay Plaintiff and other aggrieved employees who are no longer employed by Defendant their wages, earned and unpaid, either at the time of discharge or within seventy-two (72) hours of their leaving Defendant's employ.

97.     Defendant's failure to pay Plaintiff and other aggrieved employees who are no longer employed by Defendant their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendant's employ, violates California Labor Code §§ 201 and 202.

98.     Pursuant to Labor Code § 2699(f), if a person employs one or more persons, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

99.     Under California Labor Code § 2699, Plaintiff, on behalf of himself and other aggrieved employees, seeks to recover civil penalties, attorneys' fees, and costs.

100.    Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202 and 205.5, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced, but the wages shall not continue for more than 30 days.

101.    Under Labor Code Section 218.5, in any action brought for nonpayment of wages, fringe benefits, or health and welfare pension fund contributions, a prevailing plaintiff will be entitled to an award of attorney's fees and costs if requested upon the initiation of the action.

102.    Wherefore, Plaintiff and other aggrieved employees have been injured and request relief as provided.

### NINTH CAUSE OF ACTION
**Violation Of California Business & Professions Code §§ 17200,** *et seq.*
**Against Defendant**

103.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

104.    Defendant's conduct, as alleged, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff and the general public.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure §1021.5.

105.    Defendant's activities, as alleged here, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.*

106.    A violation of California Business & Professions Code §§ 17200 *et seq.* may be predicated on the violation of a state or federal law.   Defendant's policies and practices of failing to

pay all wages (e.g., commission and bonuses) violate the California Labor Code and constitute unfair business practices in violation of California Business & Professions Code §§ 17200 *et seq.*

107.    Plaintiff and other aggrieved employees have been injured by Defendant's unlawful business acts and practices as alleged, including but not limited to the loss of money or property. Defendant has reaped unfair benefits and illegal profits at Plaintiff's and other aggrieved employee's expense.

108.    Plaintiff and other aggrieved employees are entitled to immediate possession of all amounts owed to Plaintiff and other aggrieved employees by Defendant, with interest.

109.    Defendant's unfair business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that Defendant account for, disgorge, and restore to Plaintiff and other aggrieved employees, the compensation unlawfully withheld from Plaintiff and other aggrieved employees.

**TENTH CAUSE OF ACTION**
**Violation of Labor Code §§ 221 & 223**
**(Unlawful Deductions – PAGA)**
**Against Defendant**

110.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

111.    Under Labor Code Section 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

112.    Under Labor Code Section 223, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

113.     Under Labor Code Section 225.5, "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

114.     During the relevant time period, Defendant illegally deducted from Plaintiff's total sales an arena fee, which resulted in Plaintiff earning a lower commission.

115.     Wherefore, Plaintiff has been injured and requests relief.  Plaintiff also requests the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of himself and, as a proxy for the LWDA, on behalf of Defendant's other current and former employees.

## ELEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT
### Against Defendant

116.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

117.     Defendant breached its sales commission agreement with Plaintiff by failing to pay Plaintiff the agreed commissions throughout his employment.

118.     Plaintiff was harmed by Defendant's breach of the agreement.

119.     Defendant's breach of the contract was a substantial factor in causing Plaintiff's harm.

120.    Defendant deprived Plaintiff of his rightfully earned commission as a direct and proximate result of Defendant's failure to pay said commission.

**TWELFTH CAUSE OF ACTION**
**(VIOLATION OF LABOR CODE § 98.6)**
**Against Defendant**

121.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

122.    Under Labor Code Section 98.6(a), "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.

123.    Under Labor Code Section 98.6(b)(1), "Any employee who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected to an adverse action, or in any other manner discriminated against in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part,

or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer."

124.    During the relevant period, Defendant retaliated against Plaintiff because he complained about not receiving all of his earned commission and the failure of Defendant to pay him all overtime wages he believed that he earned.

125.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief.

126.    Wherefore, Plaintiff has been injured and requests relief.

### THIRTEENTH CAUSE OF ACTION
**Retaliation**
**(California Labor Code § 6310 -PAGA)**
**Against Defendant**

127.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

128.    Plaintiff engaged in protected activity by including, but not limited to complaining to Defendant of the unsafe working conditions of Oracle Arena and that Mr. Murphy previously physically grabbed his arm and pulled him into a stairway during an NBA game at Oracle Arena.

129.    Defendant and its agents knew of Plaintiff's protected activity and retaliated against him because of his protected activity.  After Defendant learned of Plaintiff's protected activity, it took adverse actions against him, including but not limited to terminating Plaintiff's employment.

130.    Plaintiff's protected activity of reporting Defendant's failure to provide safety equipment because of the unsafe working conditions, was a substantial motivating reason for the adverse actions taken against him.

131.    Plaintiff suffered and continues to suffer economic damages resulting from the retaliation.

132.    Defendant's conduct was a substantial factor in causing Plaintiff harm.

133.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief.

134.    Plaintiff also requests the civil penalties, attorney's fees, and costs recoverable in a civil action brought by aggrieved employees on behalf of himself and, as a proxy for the LWDA, on behalf of Defendant's other current and former employees.

## FOURTEENTH CAUSE OF ACTION
### Retaliation
### (California Government Code § 12940(m)(2)
### Against Defendant

135.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

136.    Plaintiff engaged in activity protected by FEHA including, but not limited to requesting an accommodation.

137.    Defendant and their agents knew of Plaintiff's protected activity and retaliated against him because of his protected activity.  After Defendant learned of Plaintiff's protected activity, they took adverse actions against him, including terminating Plaintiff's employment.

138.    Plaintiff's protected activity of requesting an appropriate accommodation was a substantial motivating reason for the adverse actions taken against him.

139.    Plaintiff has suffered and continues to suffer economic and emotional distress damages resulting from the retaliation.

140.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

141.    In doing the acts herein alleged, Defendant acted with oppression, fraud, malice and in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial.

142.    Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

**FIFTEENTH CAUSE OF ACTION**
**Whistleblower Retaliation - PAGA**
**(Labor Code § 1102.5(b))**
**(Against Defendant**

143.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth.

144.    Labor Code § 1102.5(b) provides that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discovery, or correct the violation or noncompliance, or for providing information to, testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or

federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

145.    Plaintiff informed Defendant that he intended to file a complaint with the NBA Commissioner.

146.    Defendant retaliated against Plaintiff by terminating his employment because it believed he may file a complaint with the NBA Commissioner.

147.    An employer that is a corporation or limited liability company is liable for a civil penalty not exceeding $10,000.00.

148.    The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agents/employees of Defendant acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiff, thereby justifying an award of punitive damages.

149.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and requests relief.

150.    Wherefore, Plaintiff and other aggrieved employees have been injured and request the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of himself and, as a proxy for the LWDA on behalf of Defendant's other current and former employees.

<u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff respectfully requests that this Court assume jurisdiction in this entire matter and:

1.    Grant a declaratory judgment that Defendant violated the laws of the United States and the State of California;

2.      For a monetary judgment representing compensatory damages including lost wages, earnings, employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

3.      For an award of punitive damages;

4.      For a monetary judgment for emotional pain and suffering, according to proof;

5.      For the costs of suit and attorney's fees including but not limited to 42 U.S.C. § 2000e-5, California Government Code § 12965, 29 U.S.C. §; California Labor Code §§ 218.5, 226, and 2699(g);

6.      For prejudgment and post-judgment interest;

7.      For unpaid wages, benefits, and reinstatement of employment;

8.      Reimbursement and reinstatement under Labor Code §§ 98.6(b)(1), 6310(b);

9.      For damages under Labor Code §§ 203, 226(e);

10.     For statutory and civil penalties under Labor Code §§ 210, 225.5, 226.3, 2699(a) and 2699(f);

11.     For restitution; equitable relief and injunctive relief; and

12.     For any further relief that is just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims and causes of action so triable.

Dated: November 8, 2018

Respectfully submitted,

Burton Employment Law

By:  /s/ Scott S. Nakama
SCOTT S. NAKAMA
Attorneys for Plaintiff
NICHOLAS M. SMITH